**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| OYSTER OPTICS, LLC, | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO.  2:16-CV-01302-JRG |
| | § | LEAD CASE |
| v. | § § | |
| CORIANT (USA) INC.,  CORIANT NORTH AMERICA,        LLC,        CORIANT OPERATIONS, INC., | § § § § | |
| Defendants. | § § | |
| | | |
| OYSTER OPTICS, LLC, | § § | |
| Plaintiff, | § § | CIVIL ACTION NO.  2:16-CV-01301-JRG |
| | § | CONSOLIDATED CASE |
| v. | § § | |
| CISCO SYSTEMS, INC., | § § | |
| Defendant. | § § | |

**ORDER DENYING CISCO SYSTEM'S MOTION TO TRANSFER TO THE**
**NORTHERN DISTRICT OF CALIFORNIA**

**I.      Introduction**

Before the Court is Defendant Cisco Systems, Inc.'s Motion to Transfer to the Northern

District of California, (Dkt. No. 28).  Having considered the Motion, the Court is of the opinion

that the Northern District of California is not a clearly more convenient forum for the disposition

of this case and that, accordingly, the Motion should be **DENIED**.

1

## II.    Background

Oyster Optics, LLC, ("Oyster") sued Cisco System, Inc., ("Cisco") on November 24, 2016, (Dkt. No. 1).  This case was promptly consolidated with related cases, involving alleged infringement of the asserted patents by different parties, on May 18, 2017, under Lead Case No. 16-cv-1302-JRG. (Dkt. No. 27).  A Docket Control Order and Discovery Order have been entered; the pretrial conference is set for May 21, 2018, and jury selection is set for June 4, 2018. (Case No. 16-cv-1302-JRG, Dkt. Nos. 72, 76).  Cisco filed the instant Motion on June 1, 2017. (Dkt. No. 28).

Cisco Systems, Inc., ("Cisco"), Cisco is a California corporation with its principal place of business in San Jose.  (Dkt. No. 28 at 10).  Cisco has several offices across the United States, with five of them located in Texas, and one in this District  (Collin County).  (Dkt. No. 32 at 2). Cisco sells the accused products to customers across the country, including in Texas and in this District.  (*Id*. at 3).

Oyster Optics, LLC, ("Oyster") is a Texas limited liability company headquartered at 11921 Freedom Drive, Suite 550, Reston, Virginia 20190.  (Am. Compl., Dkt. No. 35 at ¶ 1.)  "Its managers, Jeffrey Ronaldi and Bruce Lagerman, reside in Virginia and South Carolina, repectively."  (Dkt. No. 32 at 2.)  "[T]he sole inventor of the asserted patents[, Peter Snawerdt,] lives in Florida."  (*Id*. at 1)  Oyster filed its Certificate of Formation five months before this suit was filed.  (Dkt. No. 28-6 ¶ 17.)

## III.    Applicable Law

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The purpose of Section 1404(a) is "to prevent

the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. Barge F.B.L.—585*, 364 U.S. 19, 26, 27 (1960)).

The first inquiry when analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses, as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). The private factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203. The public factors are (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Volkswagen I*, 371 F.3d at 203. These factors are to be decided based on "the situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960). Though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008) ("*Volkswagen II*").

While a plaintiff's choice of venue is not an express factor in this analysis, the appropriate deference afforded to the plaintiff's choice is reflected in a defendant's elevated burden of proof.  *Id*. at 315.  In order to support its claim for a transfer under § 1404(a), the defendant must demonstrate that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff.  *Id*.  Absent such a showing, the plaintiff's choice is to be respected.

Cisco asserts, and Oyster does not dispute, that this case could have been brought in the Northern District of California.  (Dkt. No. 28 at 10.)  Cisco concedes that "Cisco is a California corporation with its principal place of business in San Jose.  Accordingly, it is subject to jurisdiction and venue is proper in the Northern District of California." (Id.)  With these concessions, the Court agrees that this case could have been properly brought in the Northern District of California, satisfying the initial requirement for transfer under § 1404(a).

The Court next addresses the applicable private and public interest factors, in turn, and addresses the Parties' arguments as appropriate. As an initial matter, both Parties concede that the public factors relating to familiarity of the forum with the law that will govern the case and the avoidance of unnecessary problems of conflicts of law are neutral factors in this analysis. (Dkt. No. 28 at 15; Dkt. No. 32 at 14).  The Court agrees and proceeds to the rest of the analysis.

## IV.    Analysis

### i.      The Relative Ease of Access to Sources of Proof

The first private interest factor regards access to sources of proof pertains to where documentary evidence, such as documents and physical evidence, is stored.  *See Volkswagen II*, 545 F.3d at 316 (discussing the location of documents and physical evidence relating to a vehicle

accident).  The critical inquiry "is [the] relative ease of access, not absolute ease of access." *In re*

*Radmax*, 720 F.3d 285, 288 (5th Cir. 2015).

      This factor is heavily influenced by which party will likely have the greater volume of

evidence and the location where that evidence will come from.  *Fujitsu Ltd. v. Tellabs, Inc.*, 639

F. Supp. 2d 761, 767 (E.D. Tex. 2009); *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).

Generally, in "patent infringement cases, the bulk of the relevant evidence usually comes from

the accused infringer." *Id.* (internal quotation marks omitted).

      Cisco identifies three sources of proof which it submits favor transfer: "technical

documents . . . [of] Cisco's third party suppliers, many of which have their headquarters or main

U.S. presence in the Northern District of California"; Cisco's own "documents [,which] are

stored on servers in either Germany or Richardson, Texas," and which "will be collected and

produced by individuals in California, not Texas"; and "Cisco witnesses most knowledge[able]

regarding those documents are mostly in California or Europe; none are in Texas."  (Dkt. No. 28

at 10).  Richardson, Texas, is within this district.

      The location of Cisco's witnesses is an issue to be factored into the third factor (cost of

attendance for willing witnesses) not the first, since the inquiry under § 1404 only looks to

factors affecting convenience *at time of trial*.  *See Leroy v. Great W. United Corp.*, 443 U.S. 173,

183–84 (1979) ("In most instances, the purpose of statutorily specified venue is to protect the

defendant against the risk that a plaintiff will select an unfair or inconvenient place of *trial*")

(emphasis added).  Thus, the access to sources of proof relates to production of evidence in

preparation for trial, i.e., bringing physical materials to the Court for exhibition before the

factfinder.  *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) (considering

only "physical and documentary evidence" in analyzing the first factor).

Second, as to Cisco's sources of proof, this factor looks at where the documents are located—not at where the individuals who are collecting or producing them are located. *SSL Servs., LLC v. Cisco Sys., Inc.*, No. 2:15-cv-00433-JRG-RSP, 2016 WL 727673, at *3 (E.D. Tex. Feb. 24, 2016) (quoting *In re Genentech*, 566 F.3d 1338 at 1345 (Fed. Cir. 2009) ("the Federal Circuit has emphasized that the physical location of evidence remains an important consideration in the venue analysis irrespective of the ease with which it can be remotely accessed; else this factor would be 'superfluous'").  As this Court has noted, while "technological advances have significantly lightened the relative inconvenience of transporting large amounts of documents across the country, [] the physical accessibility to sources of proof is still a private interest factor to be considered. Until the appellate courts address this reality, trial courts must continue to apply this factor consistent with current precedent." *SSL Servs.*, 2016 WL 727673 at *3 (citing *Volkswagen II* and *Genentech*).

Finally, the alleged technical documents of the third party suppliers is not accorded nearly as much weight.  Cisco has presented a declaration identifying that the optical transceiver of at least some of the accused products were produced by Oclaro and that Oclaro "maintains relevant documents related to the [optical transceiver] on a shared drive in Northern California," (Dkt. No. 28-2), and that Cisco employees must rely on third-party vendors for their subject matter expertise, information, and documents, (Dkt. No. 28-4 at 2).  Cisco argues that "[t]hese companies have detailed insight into the functionalities that have been accused of infringement in this case and, therefore, likely will be a primary source of evidence relevant to Cisco's non-infringement defenses and also a potential source of evidence for Cisco's invalidity defenses." (Dkt. No. 28 at 11).  This statement is speculative as to Cisco's use of this repository of documents and must be properly discounted, although not completely ignored.

Additionally, Oyster does not identify any other evidence that is located in or accessible from the District.  (Dkt. No. 32 at 4–6).

Accordingly, having weighed the presence of all of Cisco's documents in this District, the presence, but speculative use, of third party documents, and having no other evidence which is properly considered under this factor otherwise identified, the Court finds this factor weighs against transfer.

### ii.      Availability of Compulsory Process to Secure the Attendance of Witnesses

The second private interest factor pertains to a court's ability to compel attendance of witnesses, with particular emphasis on non-party witnesses.

As identified by Cisco, many of the accused device third-party component manufacturers and the Optical Internetworking Forum are either located in the Northern District of California or they exhibit a known presence in that District.  (*See* Dkt. No. 28-6 ¶¶ 6–16)  While at this stage Cisco has not identified specific witnesses, a majority of these third party suppliers appear to have a material presence in the Northern District.

Oyster asserts that since Cisco did not point to specific witnesses they would call (so that the Court may ascertain the applicability of compulsory process over those witnesses) Cisco's argument on this factor should be ignored by the Court.  Additionally, Oyster argues that the corporate headquarters of most of the third-party component manufacturers are outside of the Northern District.  Some level of specificity would certainly strengthen Cisco's position, but such is absent.  The venue analysis, by its nature, calls on courts to weigh scenarios that tend to be speculative and conjectural.[1]  While it is possible that specific third parties, employed by suppliers to Cisco, reside in the Northern District of California and could support a finding that

---

[1] This Court has lost count of the venue motions supported by declarations that Third Party X, located in the transferee venue, is "vital" to the case, only to see neither hide nor hair of Third Party X when the case comes to trial.

such makes that district more convenient, the Court is not inclined to speculate and give weight in its analysis to nebulous possibilities, when nothing prevented Cisco from investing the effort to find, locate, and identify such person(s) with particularity.

Oyster also asserts that there is no need to have live testimony at trial when depositions are available and so the factor is neutral.  While this may be theoretically correct, reaching such a conclusion would effectively eliminate this factor in every case.

Following the completion of briefing on this Motion, Oyster filed a Notice providing supplemental evidence.  (Dkt. No. 44).  In this Notice, Oyster identified witnesses who, it states, were "newly disclosed," including both third party (compulsory process) witnesses and party (willing) witnesses.  (*Id*. at 2).  Of the third party witnesses who were newly identified, one lives in Austin, Texas, one lives in Florida, and one lives in New York.  (*Id*.)  Each of these witnesses is closer to this District than the proposed transferee venue.

Having considered all relevant aspects of the parties' arguments, the Court finds this factor is neutral.

### iii.    Cost and Attendance for Willing Witnesses

The third private interest factor is the cost of attendance for willing witnesses.  "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *Volkswagen I*, 371 F.3d at 204–05.  However, as other courts in this Circuit have noted, the convenience of party witnesses is given less weight. *ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*, No. A-09-CA-773-LY, 2010 WL 1170976, at *4 (W.D. Tex. Mar. 23, 2010), report and recommendation adopted in A-09-CA-773-LY (Dkt. No. 20) (Apr. 14, 2010) ("[I]t is unclear whether Defendant is contending that the transfer would

8

be more convenient for non-party witnesses or merely for their own employee witnesses. If the

Defendant is referring to employee witnesses, then their convenience would be entitled to little

weight."). *See also Vassallo v. Goodman Networks, Inc.*, No. 5:14-cv-743-DAE, 2015 WL

502313, at *4 (W.D. Tex. Feb. 5, 2015) (noting that the convenience of non-party witnesses is

given more weight in the transfer analysis than the convenience of party witnesses); *Summit 6

LLC v. HTC Corp.*, No. 7:14-cv-0014-O, 2014 WL 4449821, at *7 (N.D. Tex. Sept. 10, 2014)

(same); *RPost Holdings, Inc. v. StrongMail Sys., Inc.*, No. 2:12-cv-515-JRG, 2013 WL 4495119,

at *4 (E.D. Tex. Aug. 19, 2013) (same).

Cisco has identified eleven party witnesses: four reside in the Northern District of

California, one lives in Southern California, one witness is in Chicago, one is in South Carolina,

two are in Ontario, Canada, one lives in Germany, and one is in Italy). (Dkt. No. 28-3 at ¶ 11;

Dkt. No. 28-4 at ¶¶ 13–14).  Cisco's assertions that transfer to the Northern District of California

would allow many of these witnesses to combine business trips with litigation-related travel,

(Dkt. No. 12–13), carry no weight with the Court.  Such assertions simply invite the Court to

speculate and, worse, they open the door to potential gamesmanship among the parties.

Similarly, Oyster has identified four potential party witnesses among its employees: one

in Virginia, one in South Carolina, one in Florida, and one in Austin, Texas.  (Dkt. No. 32 at 10.)

While all of these are closer to this District than the Northern District of California, Oyster has

identified no witnesses who reside within the Eastern District.

As noted above, following the completion of briefing on this Motion, Oyster filed a

Notice providing supplemental evidence.  (Dkt. No. 44).  In this Notice, Oyster identified "newly

disclosed" party witnesses.  In addition to the previously identified party witnesses, Cisco has

identified witnesses in Ontario, Canada, and Michigan and two witnesses in Italy.  (*Id*. at 2).

Oyster states that "with the addition of the four willing Cisco witnesses identified above, there are now a greater number of identified, willing Cisco witnesses outside N.D. Cal than within N.D. Cal." (*Id.*)

While some witnesses are present in the Northern District of California, many witnesses would find the Eastern District to be closer and more convenient while the foreign witnesses have a long trip regardless of where the trial is held.  Considering these facts, and all other relevant aspects of the factor, the Court finds this factor to be neutral.

### iv.    All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive

This final private interest factor pertains to "all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013).

Cisco did not argue that there were any practical problems litigating in this District or the Northern District of California.  Oyster submits that judicial economy strongly weighs against transfer, given there are seven related cases before this Court involving the same patents.  Oyster urges this Court to consider these copending cases in its analysis of this factor.  (Dkt. No. 32 at 11–12.)  Since filing of Oyster's brief, one of the seven cases was dismissed by stipulation, (2:16-cv-1300, Dkt. Nos. 35, 43), and another case has been transferred to the Northern District of California (Dkt. No 162).

Cisco argues, forcefully, that *In re Google*, No. 2017-107, 2017 WL 977038 (Fed. Cir. Feb. 23, 2017), commands this Court to reject Oyster's judicial economy argument based on related cases.  (Dkt. No. 28 at 14).  However, Cisco misreads the holding of *In re Google*. As opposed to forbidding consideration of *any* related suites, as urged by Cisco, *In re Google*

indicates that courts should avoid considering those copending cases which currently have, or have had, motions to transfer venue to avoid any "double count" in according proper weight.  No cases currently before the Court in this consolidated action other than the instant case have a pending motion to transfer.  Accordingly, there are five copending cases to be evaluated under this factor without double counting.

Considering the relevant facts under this factor, and in the light of the Circuit's guidance, this factor weighs against transfer.  This determination having been reached as to this factor, the Court recognizes and agrees that, while judicial economy may "play a significant role" in a court's transfer analysis, it may not "dominate" the analysis when other factors of note are present, *In re Google*, 2017 U.S. App. LEXIS 4848 at *5.

> **v.     Administrative Difficulties Flowing From Court Congestion**

The first public interest factor addresses the administrative difficulties flowing from court congestion.

Cisco submits that this factor is "neutral" because "both this District and the Northern District of California have relatively heavy patent dockets."  (Dkt. No. 28 at 15).  Oyster agrees with the statement regarding the relatively heavy patent docket, but argues that "Cisco fails to account for the fact that this case has been pending in this District for over seven months, and trial is set to take place in June 2018. The median time to trial for N.D. Cal. is 31.2 months (as compared to 19.4 months for this District).  Therefore, . . . this case likely will not go to trial in N.D. Cal. until 2020—well after the current June 2018 trial date."  (Dkt. No. 32 at 13) (citations omitted).  The Court agrees that such properly impacts the § 1404 analysis.

Taking these facts into consideration, the Court finds this factor to weigh against transfer. *See Net Nav. Sys., LLC v. Cisco Sys., Inc.*, No. 4:11-cv-660, 2012 WL 7827544, at *6 (E.D. Tex.

Aug. 24, 2012), *report and recommendation adopted*, No. 4:11-cv-660, 2013 WL 1309840 (E.D. Tex. Mar. 27, 2013) ("[R]esolution of this case could not occur any sooner following transfer to the Northern District of California, and it is likely that the parties would receive a trial setting significantly after the current trial scheduling of October 7, 2013. Therefore, the Court finds this factor weighs against transfer, since transfer would result in an unknown trial date and a significant delay in a resolution on the merits").

### vi.      Local Interest in Having Localized Interests Decided at Home

The second public interest factor addresses the local interest in having localized interests decided at home.

Cisco argues that this factor "strongly favors transfer" since "[t]he Northern District of California has a strong local interest in the outcome of this litigation [as] Cisco and many of its suppliers are either headquartered or have a significant presence in the that District. In contrast, this District does not appear to have any interest in this litigation. Although Oyster very recently formed as a Texas limited liability company, no link to this particular District exists."  (Dkt. No. 28 at 15).  Indeed, Oyster filed its Certificate of Formation in Texas five months before bringing the instant suit, possesses no facilities or employees in the district, and does not dispute its place of business is Reston, Virginia.  (Am. Compl., Dkt. No. 35 at ¶ 1; Dkt. No. 32 at 2; Dkt. No. 28-6 ¶ 17; Dkt. No. 32 at 13–14).

Oyster submits that finding a local interest in favor of Cisco, due to the presence of headquarters or other significant presence in a district, without more, "amounts to an argument that California has a localized interest in resolving this dispute because its jurors will be biased toward the defendant."  (Dkt. No. 32 at 13) (quoting *Ingeniador, LLC v. Adobe Sys. Inc.*, No.

2:12-cv-805-JRG, 2014 WL 105106, at *4 (E.D. Tex. Jan. 10, 2014).  However, as Oyster does

not dispute, there is no local interest in this District based on Oyster's presence or otherwise.

The only evidence presented to the Court of any local interest has been presented in favor

of transfer.  Taking these facts into consideration, the Court finds this factor to weigh in favor of

transfer.

## V.    CONCLUSION

Having considered the governing statute, applicable precedents, and the relevant

convenience factors, the Court finds[2] that Defendant has not satisfied its elevated burden to

demonstrate that the transferee district is a clearly more convenient forum as to this particular

case.  Accordingly, Defendant Cisco's Motion to Transfer to the Northern District of California,

(Dkt. No. 28), is hereby **DENIED**.

**So ORDERED and SIGNED this 8th day of December, 2017.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

---

[2] Summary of factor holdings: (i) "against transfer"; (ii) "neutral"; (iii) "neutral"; (iv) "against transfer"; (v) "against transfer"; (vi) "in favor of transfer"; (vii) (agreed) neutral; (viii) (agreed) neutral.